**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WAYNE L. YOUNG, #180892,

      Petitioner,

                                  Civil No: 06-CV-10977
                                  Honorable Lawrence P. Zatkoff

v.

JAN TROMBLEY,

      Respondent.

_____/

**OPINION & ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

      Petitioner, Wayne Young, is a state inmate currently incarcerated at Chippewa Correctional Facility in Kincheloe, Michigan. A Wayne County Circuit Court jury convicted Petitioner of (1) two counts of second-degree murder, Mich. Comp. Laws §750.317; (2) one count of assault with intent to commit armed robbery, Mich. Comp. Laws §750.89; (3) one count of felony firearm §750.227b; and (4) one count of felon in possession of a firearm, Mich. Comp. Laws §750.224f. Petitioner was sentenced to concurrent prison terms of forty-five to seventy years imprisonment for the second degree murder convictions, forty to sixty years imprisonment for the assault conviction and two to five years imprisonment for the felon in possession of a firearm conviction, plus a consecutive two year term of imprisonment for the felony-firearm conviction. Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court denies the petition.

# I. BACKGROUND

In reviewing Petitioner's conviction, the Michigan Supreme Court set forth the following facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002):

> Defendant shot and killed two people in an execution-style slaying while robbing a drug house in Detroit.  Among other evidence of guilt, the prosecution presented testimony from two witnesses whom defendant now claims were his accomplices, Michael Martin and Eugene Lawrence.
>
> Martin testified that defendant came to his house and asked him for a gun to rob someone.  Martin had no gun.  Defendant then spoke on the telephone to Martin's brother-in-law, Lawrence.  Martin did not hear their conversation.  Martin then drove defendant to Lawrence's house.  After they arrived, defendant and Lawrence spoke in a back room away from Martin, who again could not hear their conversation.
>
> Lawrence testified that during this conversation, defendant asked him for a gun because some men had threatened him.  Defendant did not mention to Lawrence any plan to rob a drug house.  Lawrence did furnish a gun to defendant. Martin and defendant then drove back to Martin's home.  Martin went inside his home while defendant walked off in the direction of a nearby drug house.
>
> Defendant later telephoned Martin, stating that he was planning to rob a drug house.  Martin hung up.  Later that day, defendant visited Martin's home and admitted that he had shot the two victims in the head.  After defendant left, Martin contacted Lawrence.  Martin and Lawrence then went to defendant's home.  Defendant told them that he was angry because he had killed the victim over only six rocks of crack cocaine.  Defendant called an unknown person and directed him to tell Martin and Lawrence where to find the gun. Defendant eventually directed Martin and Lawrence to a field near Martin's home where Martin found the gun.
>
> The police questioned Martin twice.  During the second interview, he disclosed what had happened.  The police then retrieved the murder weapon. Martin and Lawrence were never charged with a crime in connection with the murders.
>
> In addition to the testimony of Martin and Lawrence, the prosecution presented other evidence of defendant's guilt.  One witness testified that defendant had also asked him for a gun.  Another witness, Ronald Mathis,

2

had seen defendant in the drug house just before the murders occurred.  At that time, defendant offered to sell Mathis a gun.  Mathis then left the premises.  Upon his return approximately fifteen minutes later, Mathis discovered the victims' bodies and noted that defendant was gone.  Finally, a cigarette butt recovered at the murder scene contained deoxyribonucleic acid (DNA) material that matched defendant's DNA.

*People v. Young,* 472 Mich. 130, 133-34 (2005).

Petitioner filed an appeal of right with the Michigan Court of Appeals and raised the following issues:

I.  Defendant was denied his right to a properly instructed jury and a fair trial where the trial court failed to give a cautionary instruction on two disputed accomplices' credibility and instructed the jury that they should be judge[d] as any other witness.

II.  Defendant was denied his right to a fair and impartial jury by the trial court's cursory and inadequate voir dire and totally foreclosed defense counsel's participation in the voir dire during jury selection.

III.  The trial court abused its discretion and infringed upon Defendant's Sixth Amendment right to a fair and impartial jury by denying the defense counsel's motion for a mistrial where the prosecution concurred the jury was tainted by a dismissed juror.

IV.  Defendant was denied a fair trial by the prosecutor's misconduct and violated his right to due process of law of both the Federal and State constitutions.

V.  There was insufficient evidence as a matter of law to establish Defendant's conviction for assault with intent to rob complainant Marquees Conley while armed absent his incriminating statements as required by the Due Process Clause.

VI.  Defendant was denied a fair trial where the trial  court failed to exclude DNA evidence where the prosecution did not comply with a discovery order in violation of due process of law.

VII.  Defendant was denied the effective assistance of counsel guaranteed him by the Federal and State constitutions at trial.  Therefore, he is entitled to a new trial and/or remand for a hearing pursuant to *People v. Ginther*.

3

Petitioner subsequently filed a supplemental brief on direct appeal that raised two additional claims:[1]

> I. The Defendant's Sixth Amendment rights were violated where counsel failed to raise that the police held the line-up and in-court identification in an [impermissibly] suggestive manner.

> II. The Defendant was denied his Sixth Amendment rights to effective assistance of counsel where counsel failed to properly object to prosecutor's improper [questioning] of its witness in violation of the Fourteenth Amendment.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Young,* No: 240832, 2003 WL 22221975 (Mich. Ct. App. Sept. 25, 2003).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the same nine issues presented before the Michigan Court of Appeals. Petitioner's application for leave to appeal was granted but "limited to the issue [of] whether the 'closely drawn' rule announced by this Court in *People v. McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974), is inconsistent with MCL 768.29 and MCR 2.516(C)." *People v. Young,* 470 Mich. 869; 682 NW2d 85 (2004)(table).  Following the filing of a motion for reconsideration with the Michigan Supreme Court regarding its limited grant of Petitioner's application for leave to appeal, the Supreme Court modified its previous order as follows:

> On reconsideration, we MODIFY our order of June 3, 2004. The appeal is limited to the following issues: (1) whether Michael Martin or Eugene Lawrence were accomplices; (2) whether the facts of the case establish a "closely drawn" issue of credibility; and (3) whether the "closely drawn" rule

---

[1]Prior to filing his supplemental brief, Petitioner filed a motion for remand with the Michigan Court of Appeals requesting an evidentiary hearing on the issue of whether his trial counsel was ineffective.  The appellate court denied the motion.

announced by this Court in *People v. McCoy,* 392 Mich 231, 240; 220 NW2d
456 (1974), is inconsistent with MCL 768.29 and MCR 2.516(C).

*People v. Young,* 471 Mich. 862 (2004)(table).  Ultimately, the Michigan Supreme Court

affirmed Petitioner's convictions as ruled upon by the Michigan Court of Appeals.  *People*

*v. Young,* 472 Mich. 130 (2005).

Petitioner has filed a petition for a writ of habeas corpus asserting the same nine

claims presented in the state appellate courts.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

Court's habeas corpus review of state court decisions.  Petitioner is entitled to the writ of

habeas corpus if he can show that the state court's adjudication of his claim on the merits:

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented at the
> State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a

question of law or if the state court decides a case differently than [the U.S. Supreme]

Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362,

412-413 (2000).  A state court's decision is an "unreasonable application of" clearly

established federal law "if the state court identifies the correct governing legal principle from

[the U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III. DISCUSSION

### A. Procedural Default

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims are barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review (*e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict). *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

6

Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162. *See also Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

The Michigan Court of Appeals, the last state court to issue a reasoned opinion addressing the claims regarding cautionary jury instructions, *voir dire*, and prosecutorial misconduct, reviewed the claims only for plain error because defense counsel did not object to the conduct. The contemporaneous-objection rule was firmly established and regularly followed with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *See, e.g.,People v. Buckey*, 424 Mich. 1, 17-18 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 100 (1989). The state court's reliance on Petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *See Engle v. Isaac*, 456 U.S. 107, 110 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding).

The fact that the state court of appeals engaged in plain error review of the cautionary instruction, *voir dire*, and prosecutorial misconduct claims does not constitute a waiver of the state procedural default. *See Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has

7

demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

However, given that the cause and prejudice inquiry merges with an analysis of the merits of Petitioner's defaulted claim, the Court concludes that it would  be most efficient to simply consider the merits of the claims.

### B.  Cautionary Jury Instructions

Petitioner claims that the trial court erred when it failed to provide the jury with a cautionary instruction regarding accomplice testimony.  The Michigan Court of Appeals rejected this argument and found as follows:

> In *People v. McCoy,* 392 Mich. 231, 240; 220 NW2d 456 (1974), our Supreme Court ruled that it was "reversible error . . . . to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge."
>
> *   *   *
>
> The instant matter, however, did not present nearly the same level of a credibility contest.  First,  unlike *McCoy*, there was not just one prosecution witness that was a purported accomplice, but two, and each provided support for the other's testimony.  In other words, there was not merely the uncorroborated testimony of one accomplice.  Moreover, also unlike *McCoy,* there was another witness placing defendant both at the scene of the crime shortly before the murders and away from the scene fifteen minutes later.  Yet another witness testified that defendant was looking for a gun on the day of the murders.  Thus, there was additional testimony supporting the two purported accomplices' testimony.  In addition, defendant did not present any evidence that would have reduced the instant matter to a "closely drawn" credibility contest.  Instead, resolving the issue of defendant's guilt focused on the *general* "unbelievability" of the prosecution's witnesses – purported accomplices and otherwise.
>
> Finally, it is not clear that either Michael Martin or Eugene Lawrence was truly an accomplice.  Although the witnesses were questioned by the police, there is no indication that they were potential suspects who testified out of self-interest.  Further, to whatever extent Martin accompanied defendant on the day of the murders, even though he may not have done enough to

8

discourage defendant from arming himself or robbing someone, the evidence did not suggest that Martin was at all willing to actually help defendant. Similarly, although Lawrence provided defendant a gun, Lawrence's testimony indicated that the defendant told him he needed the gun for self-defense. There is absolutely no indication in the record that Lawrence knew what defendant planned to do with the gun. Because CJI2d 5.5(2) instructs the jury that an accomplice is someone "who knowingly and willfully helps or cooperates with someone else in committing a crime," it is doubtful that either Martin or Lawrence actually qualified as accomplices. Accordingly, we are not persuaded that the trial court erred in failing to provide the accomplice instructions. Consequently, in the absence of plain error, defendant may not avoid forfeiture of this issue. *Carines, supra,* at 763-765.

*People v. Young,* 2003 WL 22221975, *1-2.

The Michigan Supreme Court affirmed the decision of the Michigan Court of Appeals, holding as follows:

[A]pplying the plain-error test to this case, we conclude that defendant has not met his appellate burden. A cautionary accomplice instruction was not clearly or obviously required in this case. As the Court of Appeals noted, it is not clear that Martin and Lawrence were accomplices in any event. Moreover, the prosecution presented evidence of guilt beyond the testimony of the alleged accomplices, including testimony from other witnesses and physical evidence that defendant was at the murder scene. Further, defense counsel thoroughly cross-examined Martin and Lawrence and challenged their testimony during closing argument, thereby exposing their potential credibility problems to the jury. The court also instruct[ed] the jury to consider any bias, prejudice, or personal interest that a witness might have. For these reasons, defendant has not demonstrated a plain error that affected his substantial rights.

*Young,* 472 Mich. at 144.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable,

erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).

The Sixth Circuit has held, even on direct appeals from federal criminal trials, that a trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible error, so long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. *See United States v. Carr*, 5 F. 3d 986, 992 (6th Cir. 1993); *see also United States v. Bucheit,* 134 Fed. Appx. 842, 859 (6th Cir. 2005) (failure to give accomplice instruction not reversible error); *United States v. Allgood*, 45 Fed. Appx. 407, 412 (6th Cir. 2002) ("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be 'properly cautioned.'"); *Scott v. Mitchell,* 209 F. 3d 854, 883 (6th Cir.2000) ("We have since followed *Carr* in not requiring accomplice instructions as a general matter").

Federal habeas review of jury instruction claims arising out of a state court prosecution is even more deferential than direct review by a federal appellate court of a federal criminal conviction. In this case, the state trial court's refusal to specifically instruct the jury regarding the credibility of accomplice witnesses did not violate petitioner's right to due process.  The general instructions on witness credibility alerted the jury to the various considerations that it should take into account in weighing testimony, thereby giving the jury an ample basis for rejecting the testimony of the accomplice witness if it had chosen to do so. *See Latimer v. Burt,* 98 Fed. Appx. 427, 432-33 (6th Cir. 2004). Moreover,

10

in light of the evidence presented at trial, the jury had sufficient evidence to assess Martin's and Lawrence's credibility and their possible motives for lying.

Therefore, the trial court's failure to instruct the jury more specifically on the testimony of accomplices did not deprive Petitioner of a fair trial or due process of law. *See Grant v. Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996). Petitioner is not entitled to habeas relief on his jury instruction claim.

### C.  Voir Dire

Next, Petitioner claims that the trial court erred due to its inadequate and cursory *voir dire* of the jurors.  The Michigan Court of Appeals disagreed and stated as follows:

> Here, defendant does not indicate what questions he would have asked the potential jurors, nor does he challenge many of the questions actually used by the trial court.   Indeed, the trial court's questioning was more than sufficient to determine whether any juror was potentially biased.   Although defendant contends that the trial court erred in denying his motion for a mistrial based on the aforementioned stipulation to excuse one juror, he does not argue that voir dire questions would have led to the juror being excused for cause.  Further, we are not persuaded that the trial court erred in denying defendant's motion to excuse that juror.  There is no indication that defendant would have been prejudiced by that juror's presence on the jury. *Washington, supra* at 675.  Accordingly, defendant may not avoid forfeiture of this issue. *Carines, supra,* at 763-765.

*Young,*  2003 WL 22221975 at *3.

*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire,* the trial judge's responsibility to remove prospective jurors who will not be able to follow impartially the court's instructions and evaluate the evidence cannot be fulfilled. *See Connors v. United States*, 158 U.S. 408, 413 (1895). Similarly, lack of adequate *voir dire* impairs the defendant's right to exercise peremptory challenges where provided by statute

11

or rule, as it is in the federal courts. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

Trial courts nevertheless "retain[] great latitude in deciding what questions should be asked on voir dire." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). "The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). As stated in *Irvin v. Dowd*, 366 U.S. 717 (1961), "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Id.* at 722.

Before *voir dire* commenced in this case, Petitioner had an adequate opportunity to address any issues he may have had regarding *voir dire*. Petitioner chose to have the trial court hear two motions regarding his felon in possession and obstruction of justice charges. Upon stipulation of Petitioner and the prosecutor, the trial court instructed the jurors that Petitioner had a prior felony record but did so without any mention of the specifics of the felony conviction. The trial court required an offer of proof relative to the motion regarding the obstruction of justice charge.

Although Petitioner sought to have a juror dismissed and his request was denied, *infra,* Petitioner has failed to demonstrate how his case was prejudiced by the presence of the juror. Petitioner has not shown any restrictions placed on Petitioner during *voir dire,* nor has he demonstrated how he may have been impeded from exercising his right to peremptory challenges or to eliminate biased jurors. The Court therefore concludes that Petitioner was not deprived of a fair trial by a panel of impartial jurors. Habeas relief is not warranted on this claim.

12

### D. Tainted Juror

Petitioner contends that he was entitled to a mistrial because one of the jurors realized that he may have known one of the victims but was permitted to remain on the jury panel.[2]  The Michigan Court of Appeals disagreed and held as follows:

> Here, defendant's motion for a mistrial was based on a juror voluntarily disclosing that certain testimony led him to believe that he may have known one of the victims.  After questioning the juror, the trial court denied defendant's request to excuse the juror.  However, the parties eventually stipulated to the dismissal of this juror.  After dismissing the juror, the trial court questioned the remaining jurors to determine whether they had been tainted.  None of the jurors indicated that he or she had heard anything other than the fact that that excused juror may have known someone involved in the case.  Further, none of the jurors indicated that this one fact would impact their individual abilities to be fair and impartial.  In the absence of any indication that the remaining jurors were unfair or biased, the trial court did not abuse its discretion in denying defendant's motion for a mistrial. *Alter, supra* at 205.

*Young,* 2003 WL 22221975 at *2.

The Sixth Amendment guarantees the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *Irvin*, 366 U.S. at 722. The question of whether a trial court has seated a fair and impartial jury is a factual one involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d 265, 308 (6th Cir. 2000) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254, unless a habeas petitioner can prove otherwise by convincing evidence. *Gall*, 231 F. 3d at 334.

---

[2]The juror was later removed upon a stipulation between the prosecutor and defense counsel.

Here, Petitioner was not denied a fair trial because none of the jurors indicated that they heard anything other than the fact that the excused juror *may* have known someone involved in the case (*i.e.*, one of the deceased victims). Further, all of the jurors indicated that the excused juror's possible acquaintance with someone involved in the case or his dismissal from the jury panel would not impact their individual abilities to be fair and impartial. Since there is no indication that the remaining jurors were unfair or biased, Petitioner is not entitled to habeas relief on this claim.

### E.  Prosecutorial Misconduct

Petitioner contends that the prosecutor engaged in several instances of misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

14

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006).  If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516.  The Sixth Circuit identified four factors to consider when analyzing allegedly flagrant conduct: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000).

### 1.   Prosecutor's Summation of Facts

Petitioner claims it was improper for the prosecutor to summarize the facts in front of the jury from the decedents' point of view.  The Michigan Court or Appeals rejected this argument as follows:

> Here, although the prosecutor used a unique method to present her theory of the case, we are not persuaded that it was an unreasonable method. Accordingly, in the absence of plain error, defendant may not avoid forfeiture of this issue. *Aldrich, supra* at 110.

*Young,* 2003 WL 22221975 at *4.  Having reviewed the prosecutor's remarks in this case, the Court finds that her statements to the jury do not rise to the level of prosecutorial misconduct.

### 2.  Improper Vouching

Petitioner next asserts that the prosecutor vouched for the credibility of law enforcement officials.  The Michigan Court of Appeals rejected that argument as follows:

However, although the prosecutor certainly vouched for the police force's

15

general competence, her argument did not directly vouch for the credibility of any particular witness.  Further, the few police witnesses that testified provided only general information, none of which was material to resolving the disputed questions of fact.  Thus, defendant's argument is misplaced and defendant has failed to establish that the argument was plainly erroneous. *Aldrich, supra* at 110.

*Young,* 2003 WL 22221975 at *4.

"Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993).  Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby causing any perceived prestige of the office of the prosecutor to bolster the witness's believability.  *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999).  Comments that imply that the prosecutor has special knowledge of facts not before the jury that touch on the  credibility and truthfulness of witnesses is improper bolstering.  *United States v. Carroll,* 26 F.3d 1380, 1388 (6th Cir. 1994).

Upon review of the prosecutor's comments concerning the *alleged* credibility and testimony of police officials, the Court concludes that such comments did not constitute improper vouching in this case.

### 3. Prosecutor's Opinion

Petitioner claims that the prosecutor's argument contained an improper injection of her own opinion.  The appellate court disagreed and stated that "the prosecutor may 'argue

16

the evidence and all reasonable inferences arising from it as they relate to the theory of the case.'  Accordingly, this issue is plainly without merit." *Young,*  2003 WL 22221975 at *4 (citations omitted).   The Court agrees for the reasons stated above.

### 4.  Improper Rebuttal Argument

Petitioner next maintains that the prosecutor's rebuttal argument improperly bolstered Martin's credibility.  The Michigan Court of Appeals concluded that "it is not clear that the argument was improper." *Young,*  2003 WL 22221975 at *4.   "The prosecutor did not "vouch" for Martin's credibility; instead, she merely argued a reasonable  inference from the facts. *Id.*  The Court also does not find Petitioner's argument persuasive for three reasons.  First, the Sixth Circuit "has been reluctant to grant habeas petitions on improper prosecutorial statements at closing argument," *Wilson v. Mitchell,* 250 F.3d 388, 399 (6th Cir. 2001), for "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Second, prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg,* 682 F2d 605, 607-08 (6th Cir. 1982) (*en banc).* Finally, upon reviewing the challenged remarks, the Court does not find that the prosecutor bolstered Martin's credibility by imposing her own personal beliefs and opinions upon the jury.

### 5.  Appeal to Sympathy

Petitioner contends that the prosecutor improperly sought to invoke sympathy for the victims.  The Michigan Court of Appeals disagreed:

Although there is some merit to defendant's contention that the argument may have been improper in this regard, we note that the argument was more of a plea to not treat the victims worse because of their presence in a crack house.  The prosecutor's argument merely reminded the jurors that the rules that protect society also apply to protect people with drug problems. Regardless, we are not persuaded that the prosecutor's argument denied defendant a fair trial.  *Aldrich, supra* at 110.  The victims did not testify, so additional sympathy for them would not have increased their credibility. Instead, defendant's guilt was based on the credibility of several non-victim witnesses.  Also, the jury ultimately found defendant guilty of second-degree murder, the lesser-included offense.  Thus, it is doubtful that the prosecutor's argument swayed the jury into an emotional verdict. Moreover, the comments were brief  and any prejudice could have been cured with a timely objection and appropriate curative instruction  Consequently, defendant may not avoid forfeiture of this final contention of prosecutorial misconduct. *Id.*

*Young,*  2003 WL 22221975 at *4.

While a prosecutor cannot take actions which are "calculated to incite the passions and prejudices of the jurors," *United States v. Solivan,* 937 F.2d 1146, 1151 (6th Cir. 1991), a prosecutor may argue from the facts that a witness is (or is not) worthy of belief, *see Portuondo v. Agard,* 529 U.S. 61, 69 (2000), and may argue inferences from the evidence. *See  Byrd v. Collins,* 209 F.3d at 535.

Although the prosecutor's argument could have reflected some sympathy for the victims, the Court agrees with the appellate court's interpretation of the prosecutor's comments. Even if the argument could be seen as improper, it was not so flagrant as to deny Petitioner a fair trial.  Moreover, Petitioner's claim also would be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. *See Welch v. Burke,* 49 F.Supp.2d 992, 1006 (E.D. Mich. 1999).

For the reasons set forth above, the Court finds that habeas relief is not warranted relative to Petitioner's prosecutorial misconduct claim.

### F.  Sufficiency of Evidence

18

Petitioner asserts that there was insufficient evidence to sustain his conviction for assault with intent to commit armed robbery. The Michigan Court of Appeals rejected this argument and found as follows:

> In the instant matter, the two victims were found dead in a crack house under circumstances strongly suggestive of homicide. In light of the homicide, it stands to reason that the victims were assaulted. Once this showing was made, defendant's statement could be used to establish the "aggravating circumstance" of assault with intent to commit armed robbery. See *Cotton, supra* at 389 (noting that once the corpus delicti rule is established, a defendant's confession may be used to elevate a crime to one of a higher degree or to establish an aggravating circumstance). This, of course, was accomplished through Martin's testimony.
>
> It should be noted, however, that Martin's testimony preceded the evidence establishing that the victims were found shot to death. Thus, Martin's testimony should not have been admitted until after this evidence was introduced. An argument could be made that it was plainly erroneous to allow the introduction of Martin's testimony until after the corpus delicti was introduced. On the other hand, a timely objection would only have led to a change in the order of the witnesses. Eventually, Martin would have been able to offer that testimony. Therefore, we are not persuaded that the plain error, if any had any impact on the outcome of the proceedings. *Carines, supr* at 763-765. Consequently, defendant's contention of error is without merit.

*Young,* 2003 WL 22221975 at *6.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is:

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

19

the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979) (internal citation and footnotes omitted) (emphasis in original). This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at n.16. "[N]ormally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F.Supp.2d 657, 681 (E.D. Mich. 2006).

Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D.Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F.Supp.2d 974, 985 (E.D.Mich. 2002) (internal citations omitted). The habeas court does not substitute its own judgment for that of the finder of fact. *See Alder v. Burt,* 240 F.Supp.2d 651, 661-62 (E.D. Mich. 2003). In a federal habeas proceeding, the scope of review of the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

Petitioner asserts that there was insufficient evidence to prove the requisite elements of an assault with intent to rob offense, which are: "(1) assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's  being armed."  *People v. Cotton,* 191

Mich. App. 377, 391 (1991) (citation omitted).  However, the record clearly indicates that the prosecutor presented evidence to establish that Petitioner assaulted his victim with the intention of stealing from him.  (Tr. 1/17/02, at  35, 39-40, 44, 87-88; Tr. 1/22/02, at 5, 35, 57).  As it is the job of the jury (and not the court sitting on habeas review) to resolve conflicts in the evidence, this Court must presume that the jurors resolved those conflicts in favor of the prosecution.  *Jackson,* 443 U.S. at 326; *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983); *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992); *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003).  Based on its review of the record, the Court concludes that there was sufficient evidence presented from which the jury  could infer that Petitioner assaulted his victim with the intent to steal from him.  Accordingly, the Michigan Court of Appeals' resolution of this claim was not an unreasonable application of *Jackson*.  Therefore, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

## G.  Failure to Exclude DNA Evidence

Petitioner next asserts that the DNA evidence implicating him in these crimes should have been excluded from evidence because the prosecutor committed a *Brady*[3] violation when she failed to disclose the evidence for Petitioner's review.  The Michigan Court of Appeals rejected this argument, as follows:

> Here there is no indication that the prosecution suppressed "favorable evidence."  If anything, the fact that defendant's DNA was found at the scene of the crime would tend to be inculpatory.  The evidence was certainly  not favorable to defendant.  Accordingly, we reject defendant's contention of error.

---

[3]*Brady v. Maryland,* 373 U.S. 83 (1963)

*Young,* 2003 WL 22221975 at *6 (citation and footnote omitted).   The Court agrees.

To the extent that Petitioner contends that the prosecutor violated state discovery rules, his claim generally involves an issue of state law that is not cognizable in a federal habeas corpus proceeding. See *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  Petitioner also asserts a Brady violation.  *"Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or innocence.'" *Brady,* 473 U.S. at 87.  Evidence is favorable to the accused if it exculpates the accused or enables the accused to impeach witnesses.  *United States v. Bagley,* 473 U.S. 667, 676 (1985). Evidence is material to guilt or innocence "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id.*  at 682.

Petitioner has failed to demonstrate (1) the DNA evidence (*i.e.,* saliva found on a cigarette butt found in the "crack" house" and blood found on a staircase) was favorable evidence, or (2) how a more expedient  discovery of the evidence would have changed the outcome of the trial proceedings.  Moreover, the record indicates that Petitioner had notice of the prosecution's intention to use DNA evidence as part of its theory of the case prior to the start of trial.  (Tr. 1/11/02, at 7).

In addition, even assuming the evidence was exculpatory, Petitioner cannot establish a *Brady* violation because the evidence was disclosed by the prosecution before the trial began.  *Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose; a delay only violates *Brady* when the delay itself causes prejudice.  *See United States v. Blood,* 435 F.3d 612, 627 (6th Cir.

22

2006); *Farrell v. U.S.,* 162 Appx. 419, 424 (6th Cir. 2006) ("tardy disclosures of *Brady* material do not violate the defendant's constitutional rights unless he can demonstrate the delay denied him a constitutionally fair trial"). Petitioner's argument that the belated disclosure of the DNA report prejudiced his entire defense is meritless. Therefore, habeas relief is not warranted on this claim.

### G. Ineffective Assistance of Counsel

Petitioner asserts that his trial attorney's legal representation was ineffective because she failed to: (1) request a cautionary instruction regarding accomplice testimony; (2) object to several instances of prosecutorial misconduct; and (3) challenge the circumstances surrounding the allegedly suggestive police line-up. As to each claim of ineffective assistance of counsel, the Michigan Court of Appeals rejected Petitioner's arguments stating as follows:

> [T]he evidence did not suggest that Martin and Lawrence were accomplices. Accordingly, there as no basis for providing that instruction. Trial counsel is not ineffective for failing to advocate a meritless position. *Snider, supra* at 425.

> Having concluded that the prosecutor's arguments were either fair commentary or did not have any impact on the outcome of the proceedings, trial counsel was not ineffective for failing to object. *Snider, supra* at 423-425.

> We note that the record does not indicate that trial counsel was aware of the sheriff's [law enforcement official who conducted the line-up] existence. Nor does the record confirm that the sheriff would have testified as defendant suggests. Accordingly, there is no basis in the record for a conclusion that trial counsel was deficient. *Snider, supra* at 423-424.

> Defendant also contends that trial counsel was ineffective for failing to move to exclude evidence relating to a witness, Ronald Mathis, identifying him during the physical lineup. Although there is some basis in the record to support a challenge to that identification, we note that the testimony of Martin and Lawrence was far more damaging to defendant than this identification.

23

Thus, we are not persuaded that a motion to exclude the identification even if successful, would have had any impact on the outcome of the proceedings. Therefore, we reject defendant's contention of error. *Snider, supra* at 423-424.

Defendant also contends that counsel was ineffective for failing to challenge Mathis' second round of testimony, where he ended up identifying defendant . . . [I]t is likely that the trial court would have rejected a challenge to the identification based on Mathis' suggestion that his refusal to testify was based on fear. In fact, an objection may have caused Mathis to explain or justify his fear, causing more prejudice to defendant than just letting Mathis reverse his stance on identifying defendant. For all these reasons, we reject defendant's challenge to the effectiveness of trial counsel regarding this identification. *Snider, supra,* at 423-424.

Finally, defendant contends that trial counsel should have objected to a prosecutor's question on the basis of prosecutorial misconduct. We note that trial counsel did object to the question as leading, and the objection was sustained. Accordingly, there is no basis for a conclusion that trial counsel was somehow deficient. Regardless, we are not persuaded that the question was improper. Consequently, we reject defendant's contention or error. *Snider, supra* at 423-424.[4]

*Young,* 2003 WL 22221975 at *7. The Michigan Supreme Court affirmed the decision of

the Michigan Court of Appeals relative to the issue of accomplice testimony and stated:

A cautionary instruction was not clearly or obviously required in this case. As the Court of Appeals noted, it is not clear that Martin and Lawrence were accomplices in any event.

*Young,* 472 Mich. at 144.

To show that Petitioner was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v.*

*Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-

pronged test for determining whether a habeas petitioner has received ineffective

---

[4]The record shows that trial counsel placed an objection on the record and the objection was sustained. (Tr. 1/22/02, at 36).

assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The Court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).   Under *Strickland,* a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy.  *See Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

For the reasons stated above (including the basis for the conclusions of the Michigan

25

Court of Appeals), the Court does not find that the state court's decision regarding the effectiveness of counsel was contrary to or an unreasonable application of Supreme Court precedent.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

**IT IS SO ORDERED.**


**S/Lawrence P. Zatkoff**
**LAWRENCE P. ZATKOFF**
**UNITED STATES DISTRICT JUDGE**

**Dated:  March 31, 2009**


**CERTIFICATE OF SERVICE**

**The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 31, 2009.**


**S/Marie E. Verlinde**
**Case Manager**
**(810) 984-3290**